**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wayne Richard ALLEN, Jr.,**
**Defendant–Appellant.**

**No. 90–50666.**

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 8, 1992 *.

Decided Jan. 31, 1992.

Inge Brauer, Brauer & Sharpe, San Diego, Cal., for defendant-appellant.

Randy K. Jones, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FARRIS, NOONAN and TROTT, Circuit Judges.

PER CURIAM:

Wayne Richard Allen appeals the district court's denial of his motion to dismiss the indictment against him on the ground of outrageous government misconduct.[1] We affirm.

In 1985, one Charles Hill organized Triple Neck Scientific, a chemical supply house patronized by Allen and the source of information that Allen was involved in the manufacture of methamphetamine. At about the same time, Hill contacted the

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

1. Two unconsolidated cases before this panel along with Allen's raise the same issue. *See United States v. Nichols*, Nos. 90–50285, 90–50209, 90–50286, 90–50319, 90–50320, 90–50322, 90–50323, 90–50349, 956 F.2d 276 (table) (9th Cir.1992); *United States v. DaSilva*, 953 F.2d 1388 (table). The government conduct challenged in those cases is the same conduct that Allen challenges here.

local Drug Enforcement Agency office and agreed to supply them with information regarding customers purchasing chemicals and equipment used to manufacture methamphetamine. This arrangement enabled the DEA to initiate an operation spanning some four years to identify methamphetamine manufacturers in southern California. During that time, the DEA undertook a variety of actions, including (1) the purchase of advertising to assist Hill in generating business, (2) camera surveillance of Triple Neck premises and (3) the use of a law enforcement officer as an undercover employee of Triple Neck. The DEA was aware that substantial amounts of precursor chemicals were being sold during the operation, and it permitted Hill to retain all funds he received through Triple Neck.

Allen contends that government involvement in the oversight and manning of Triple Neck Scientific amounted to outrageous misconduct. We will dismiss an indictment if government misconduct has been so outrageous that it results in a violation of due process. *United States v. Luttrell*, 889 F.2d 806, 811 (9th Cir.1989), *modified*, 923 F.2d 764 (9th Cir.1991) (en banc). We have pointed out that the channel for relief opened by this defense is a most narrow one. *United States v. Simpson*, 813 F.2d 1462, 1465 (9th Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987).

In reviewing Allen's motion to dismiss, we must determine initially whether the government's conduct was " 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " *Id.* at 1464 (quoting *United States v. Ramirez*, 710 F.2d 535, 539 (9th Cir.1983)). It was not.

Unsavory conduct alone will not cause the dismissal of an indictment. *United States v. Smith*, 924 F.2d 889, 897 (9th Cir.1991); *Simpson*, 813 F.2d at 1464.

The government's consent to and participation in the operation of a facility for the supply of chemicals used in the manufacture of methamphetamine does not offend the universal sense of justice. We must view the question "in light of the limited range of law enforcement techniques available for investigating drug manufacturing enterprises." *United States v. Smith*, 538 F.2d 1359, 1361 (9th Cir.1976); *see also United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (considering "practicable means of detection" of illicit drug manufacture and concluding that infiltration and supply of drug manufacturing rings are "recognized and permissible means of investigation" that do not offend a universal sense of justice). Manufacturers of methamphetamine might resort to hundreds of supply houses in the area to obtain the required materials. Closing any one of them would have little effect on a manufacturer's access to others like them. By working closely with Triple Neck, the government was able to attract and identify the manufacturer in the normal course of his activity and to maintain close contact with him for a significant period of time. As a result, the expertise of many manufacturers was neutralized. The government's acts were neither outrageous nor misconduct.

AFFIRMED.