**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Raoul Barrie CLYMER, Defendant– Appellant.**

No. 91–50326.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided June 2, 1994.

Rebecca Donaldson, San Diego, CA, for defendant-appellant.

D. Thomas Ferraro, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Opinion by Judge REINHARDT.

Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.

REINHARDT, Circuit Judge:

Once again, we are called upon to review a conviction obtained by the government as a result of its four-year sting operation at the Triple Neck Scientific company in Kearny Mesa, California. *See, e.g., United States v. Bruce,* 976 F.2d 552 (9th Cir.1992); *United States v. Nichols,* 956 F.2d 276 (9th Cir.1992) (table); *United States v. Allen,* 955 F.2d 630 (9th Cir.1992) (per curiam). In exchange for an agreement by the owner of Triple Neck to provide the DEA with information about customers who purchased chemicals and equipment used in the manufacture of methamphetamine, the government purchased advertising to aid the company in generating business, and it allowed the owner to retain all profits he acquired through the sale of methamphetamine precursors. The Triple Neck Scientific operation reportedly led to the indictments of approximately 100 individuals, as well as a $9,000,000 profit for the owner of the company. In *Allen,* we considered the broad issues of the bounds of permissible government conduct raised by the manner in which the government carried out the sting. Today, however, we focus only on a discrete

* The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

aspect of the district court proceedings relating to a single defendant.

## I.

Although the facts of this case and the various issues raised by the appellant are somewhat complex, we dispose of the case on a narrow ground. Accordingly, we need not discuss the facts and prior proceedings in detail.

Raoul Clymer was a relatively minor figure in the Triple Neck Scientific operation. He was arrested on January 25, 1989. A few days later, on February 3, a grand jury returned a two-count indictment. This indictment charged Clymer—along with Kirk Schlichter, Deborah Miserany, Michael Loughran, and Kenneth Bruce—with one count each of conspiracy to possess methamphetamine with the intent to distribute, see 21 U.S.C. §§ 841(a)(1) & 846, and possession of methamphetamine with the intent to distribute. See 21 U.S.C. § 841(a)(1). On April 28, 1989, the grand jury returned a six-count superseding indictment against the same five defendants. Count One charged Clymer and his four co-defendants with conspiracy to manufacture and possess methamphetamine with the intent to distribute. Counts Two and Three charged the defendants with manufacturing and attempting to manufacture methamphetamine. Counts Four and Five alleged that all five defendants had possessed methamphetamine with the intent to distribute. (Clymer was not named in Count Six, which charged Miserany, Loughran, and Bruce with the use of a firearm during a drug trafficking offense).

The pretrial proceedings were marked by extensive delays. In 1989, the principal causes of these delays were the pendency of numerous pretrial motions, and a two-month discovery hiatus imposed by the district court at the government's request. On November 20, 1989, after the district court had set and vacated the trial date on at least three occasions, the court scheduled a new trial date for January 9, 1990, more than eleven months after the grand jury returned the original indictment.

However, the trial did not begin on January 9. Instead, on that date Clymer's co-defendants Schlichter and Loughran entered into plea agreements. His other two co-defendants, Miserany and Bruce, entered into plea agreements the next day. At the hearing on January 8, the Assistant United States Attorney offered Clymer the same plea bargain he offered to Schlichter: if Clymer pled guilty to conspiracy, which carried a maximum sentence of four years, the government would dismiss the remaining counts in the indictment. The prosecutor announced his intention to seek an enhanced penalty if Clymer did not agree:

> If the defendant decides to proceed to trial, your honor, I have an information. I won't file it at this time. But I have an information giving the defendant notice that the government intends to seek enhanced penalties for the fact that the defendant has a prior drug conviction. Minimum mandatory imprisonment would be 20 years, maximum life, a million dollar fine, and 10 years supervised release.

Despite the indication that he would serve a minimum of twenty years if he went to trial, as opposed to the four he would serve if he entered into the agreement, Clymer rejected the plea bargain and decided to challenge the government's charges at trial. He also moved to relieve his counsel. The district court granted this motion and appointed a new attorney to assist Clymer.

On March 5, 1990, the district court disposed of all of Clymer's pending motions except for his motion to dismiss for outrageous government conduct. The court continued the latter motion (and Clymer's new theories of grand jury perjury and government misconduct, which he expressed orally at the March 5 hearing) until after the trial. As the Assistant United States Attorney had promised during the plea negotiations, the government on May 2, 1990, filed an information seeking enhanced penalties pursuant to 21 U.S.C. § 851. On May 15, Clymer was arraigned on this information, and the district court granted Clymer's motion to proceed pro se and continued the trial until June 5. Largely because Clymer had difficulty preparing for his trial as an incarcerated pro

se litigant, the district court re-set the trial for June 26 and then July 10.

The trial finally commenced on July 10, 1990. On July 26, the jury returned a verdict. It found Clymer guilty of conspiracy as charged in Count One and of aiding and abetting the manufacture and attempted manufacture of methamphetamine, as charged in Count Two. However, it acquitted him of all of the other charges in the indictment. After numerous post-trial motions, Clymer was sentenced on April 19, 1991, to twenty years imprisonment and ten years of supervised release.

Clymer filed a timely notice of appeal on April 24, 1991. Because of a series of court reporter delays and failures of court-appointed counsel to prosecute this appeal, Clymer moved to relieve his appellate attorney and proceed pro se. Although we granted the motion, Clymer had difficulty preparing his appellate brief, and we appointed new counsel on November 9, 1992. Clymer's new (and last) attorney filed an opening brief on April 21, 1993. Oral argument was held on October 5 of that year.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Because Clymer had been incarcerated throughout the extraordinary delay that accompanied both his trial and his appeal, and had served almost five years by the time of oral argument, we ordered him released shortly thereafter. We now reverse.

**1.** A district court's application of the Speedy Trial Act is reviewed *de novo, See United States v. Nash,* 946 F.2d 679, 680 (9th Cir.1991).

**2.** Clymer's indictment was filed on February 3, 1989. (His initial appearance had occurred several days earlier). He was brought to trial on July 10, 1990. Although the grand jury returned a superseding indictment on April 28, 1989, this action did not re-start the Speedy Trial Act clock. When a superseding indictment contains charges which, under double-jeopardy principles, are required to be joined with the original charges, Speedy Trial Act calculations begin from the date of the *original* indictment (or initial appearance). *See United States v. Karsseboom,* 881 F.2d 604, 607 (9th Cir.1989).

## II.

Clymer raises an impressive number of claims on this appeal. Although we believe it likely that many of these claims have merit, we find one dispositive. Accordingly, we need not reach the others. We agree with Clymer that the district court erred in denying his motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*[1]

### A.

■ Pursuant to the Speedy Trial Act, a defendant must be brought to trial within seventy days of the indictment or of his initial appearance before a judicial officer, whichever is later. *See* 18 U.S.C. § 3161(c)(1); *United States v. Hoslett,* 998 F.2d 648, 653 (9th Cir.1993). However, the Act sets forth several types of so-called "excludable delay." *See* 18 U.S.C. § 3161(h). As the name suggests, any pretrial "excludable delay" does not count toward the seventy day limit. In this case, the pretrial delay amounted to 522 days, more than seven times the limit.[2] Thus, we can uphold the district court's refusal to dismiss the indictment only if 452 days—nearly fifteen months—of that delay was excludable under the Act.[3]

■ The government contends that nearly all of the 522–day delay was excludable under the Act. It presents two theories. First, because the district court found on three occasions that the case was "complex," the government argues that the pretrial delay is excludable under 18 U.S.C.

**3.** Wholly apart from the requirements of the Speedy Trial Act, we find the 522–day delay in this case to be exceedingly troublesome. Especially in a case like this one, in which the defendant remains incarcerated pending trial, district courts are under a duty to ensure that a trial occurs as promptly as possible, consistent with affording the defendant a full opportunity to prepare his case. It is simply intolerable for a defendant—who may ultimately be found innocent—to be forced to spend almost a year and a half in jail before he has any opportunity to present his case. While we need not address the issue today, the excessive delay in this case could conceivably support the conclusion that Clymer was denied his rights under the Sixth Amendment's Speedy Trial Clause.

§ 3161(h)(8)(A).[4] While we assume that 57 days—from February 13, 1989, through April 10, 1989—were excludable under this provision, we cannot agree with the government's contention with respect to the rest of the pretrial delay.

We have recognized on numerous occasions that the "ends of justice" exclusion in § 3161(h)(8)(A) was "intended by Congress to be 'rarely used,' and that the provision is 'not a general exclusion for every delay.'" *United States v. Jordan*, 915 F.2d 563, 565 (9th Cir.1990) (citations omitted) (quoting *United States v. Nance*, 666 F.2d 353, 355 (9th Cir.), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *United States v. Martin*, 742 F.2d 512, 514 (9th Cir.1984)). In *Jordan*, we made clear that a district court may grant an "ends of justice" continuance only if it satisfies two requirements: (1) the continuance is "specifically limited in time"; and (2) it is "justified [on the record] with reference to the facts as of the time the delay is ordered." *Id.* at 565–66; *accord United States v. Pollock*, 726 F.2d 1456, 1461 (9th Cir.1984).

The district court made three separate "complexity" findings pursuant to § 3161(h)(8)(B)(ii). The first such finding, on February 13, 1989, accompanied a continuance which we assume satisfied the dictates of our case law. On that date, the district court continued proceedings until April 10, 1989, in order to allow the government to conclude its Triple Neck Scientific operation and bring charges against other defendants before it provided Clymer with discovery. The government alleged that providing discovery to Clymer "would impede a significant ongoing investigation and significantly endanger the lives of confidential informants and the undercover agent." [CR 21].

Even assuming that the 57–day continuance which commenced on February 13, 1989, complied with the dictates of the Act, 465 days of non-excludable delay remained. We conclude that the district court's other two "complexity" findings did not satisfy the requirements for an ends of justice exclusion under § 3161(h)(8)(A). Therefore, they cannot render any of the remaining 465–day delay excludable. The district court's second such finding came in response to the government's oral motion on July 13, 1989, to declare the case complex. Although the court purported to "make a finding, based on the statements [the Assistant United States Attorney] just made, that the case is complex litigation," the court clearly failed to satisfy *Jordan*'s first requirement. The district court's declaration was not "specifically limited in time." *See Jordan*, 915 F.2d at 565–66. The court never stated how much time would be excluded as a result of his finding, and it never explained when the case's complexity would terminate for Speedy Trial Act purposes. *Jordan* and its predecessors clearly prohibit this kind of open-ended declaration.

The district court made its third complexity finding at a hearing on April 19, 1991, approximately nine months *after* the trial. The district judge said at the hearing that even if he had not declared the case complex prior to trial, sufficient cause existed to toll the Speedy Trial Act calculation. We express no view on the merits of this determination, for we have previously stated that a district court "may not, 'subsequent to the grant of a continuance, undertake for the first time to consider the factors and provide the findings required by section 3161(h)(8)(A).'" *Jordan*, 915 F.2d at 566 (quoting *United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984)). The district court's post-trial finding that the Speedy Trial Act was

---

4. That provision excludes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A). In deciding whether to grant an "ends of justice" continuance, district judges must consider, *inter alia:*

> Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

18 U.S.C. § 3161(h)(8)(B)(ii).

tolled is precisely the kind of post hoc justification for excessive pretrial delay that we disapproved in *Jordan* and *Frey*. Accordingly, it fails to meet the standards for excludable delay under the Speedy Trial Act. ·

■ The actions of the prosecutor in· this case—in seeking to justify the pretrial ·delay on the basis of the district court's early, open-ended "complexity" declaration and its retroactive post-trial finding that the Speedy Trial Act was tolled—indicate to us that the principles we set forth in *Pollock*, *Frey*, and *Jordan* have not yet been fully absorbed. We take this opportunity once again to emphasize that the "ends of justice" exclusion in § 3161(h)(8) is not to be routinely applied, and that it may not be invoked in such a way as to circumvent the time limitations set forth in the Act· The Speedy Trial Act and its amendments are the product of a series of delicate legislative compromises. The Act requires criminal cases to be brought to trial promptly, subject to certain, enumerated exceptions. This delicate balance could be seriously distorted if a district court were able to make a single, open-ended "ends of justice" determination early in a case, which would "exempt the entire case from the requirements of the Speedy Trial Act altogether." *Jordan*, 915 F.2d at 565–66. The Act's carefully-crafted exclusions would be rendered wholly irrelevant if a district court could invoke the "ends of justice" provision *retroactively*, to validate any delay that occurred prior to trial. Whatever substantive limitations our cases place on the application of that provision, we have also imposed significant *procedural* constraints on district courts that wish to exclude delay on the basis of the "ends of justice." The district court failed to adhere to these procedural requirements in this case. Accordingly, we conclude that the "ends of justice" provision in § 3161(h)(8) can serve only to exclude the 57 days from February 13, 1989, to April 10, 1989.

■ The government's second theory is that the remaining 465 days of the pretrial delay were excludable under § 3161(h)(1)(F) of the Speedy Trial Act. That provision excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). When delay results from the filing of a pretrial motion, § 3161(h)(1)(F) provides an exclusion for "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Henderson v. United States*, 476 U.S. 321, 330, 106 S.Ct. · 1871, 1877, 90 L.Ed.2d 299 (1986).

In this case, several of the defendants (including Clymer) had motions· pending on April 10, 1989, the day·the "ends of justice" continuance terminated. The district court decided some of those motions on April 10, but continued any·proceedings on the others until June 5, 1989. In the interim, on April 22, Clymer filed a motion ·to dismiss the indictment for outrageous government conduct.· At a hearing on July 13, the district court continued this motion until the time of trial.[5] On March 5, 1990—more than four months before the trial—the district court finally disposed of all of Clymer's motions except for his motion to dismiss. The district court continued this motion—which now alleged grand jury perjury and government misconduct as well as outrageous government conduct—until the end of the trial. The district court believed that it would be unable to evaluate· the allegations of outra-· geous government conduct until it heard the evidence presented at trial. The court appears to have been persuaded by the Assistant United States Attorney's contention at· the July 13, 1989, hearing that a pretrial hearing on the motion to dismiss would "involv[e] the same witnesses, [and] the same testimony that would have been presented at trial," and would be tantamount to "hav[ing]

---

**5.** At the July 13 hearing, the district court actual-· ly dealt with a large number of pending motions. It continued several of these motions to the time of trial, including all defendants' motions for discovery and for severance. The severance motions became moot on January 10, 1990; on that date, the last two of Clymer's co-defendants pleaded guilty. A minute order dated January 26, 1990, states that Clymer's joinder in the co-defendants' motion for discovery was also dismissed as moot.

two trials in this case." In light of these considerations, the district court decided to hold the motion in abeyance until the conclusion of the trial. In effect, the district court denied the motion without prejudice to the filing of a renewed submission after the conclusion of the trial.

■ Because of the district court's decision to continue the motion to dismiss until the end of the trial, motions were "pending" for all but 10 days of the 465 days of delay not attributable to the "ends of justice" continuance. However, the statute does not exclude all pretrial delay that merely coincides with the pendency of a motion. It only excludes pretrial delay "*resulting from*" that motion. 18 U.S.C. § 3161(h)(1)(F) (emphasis added). "In construing the Speedy Trial Act, '[o]ur task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.'" *Hoslett*, 998 F.2d at 654–55 (quoting *Negonsott v. Samuels*, —— U.S. ——, ———, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993)). According to its plain terms, § 3161(h)(1)(F) applies only when the delay in bringing the case to trial is the *result* of the pendency of a pretrial motion. That provision does not refer to delay "coinciding with" or "accompanying" the pendency of a motion. It refers only to delay "resulting from any pretrial motion." By phrasing the exclusion in this way, Congress clearly expressed its intent to toll the Speedy Trial Act clock when the need to decide the motion would interfere with the case's proceeding to trial. Equally clearly, Congress did not intend to allow district courts to render the time limits in the Act a nullity by setting motions for hearing at the time of trial or after trial and thereby making *all* time prior to trial excludable. In short, under the plain language of the statute, delay is excludable only when it in some way results from the pendency of the motion.

While in the ordinary case all pretrial delay that coincides with the pendency of a motion will occur as a result of that motion (because the district court will ordinarily hold off the trial date until it decides the

motion), this case is not the ordinary case. Here, only a maximum of 330 days of the otherwise non-excludable pretrial delay could be said to have "*result[ed]*" from any pretrial motion." After March 5, the *only* pending motion was Clymer's motion to dismiss, which the district court had continued until after the trial. The pendency of this motion did not cause the trial to be delayed. Once the district court decided to continue the motion to dismiss until after trial, it set the trial schedule without reference to the fact that the motion was pending. In effect, the motion dropped out of the case temporarily, because the district judge would not even *consider* the motion until he had heard the evidence at trial. Because the delay after March 5 did not *result* from the pendency of any motion, the 125 days between March 5, 1990, and July 10, 1990, were not excludable under the Act. When this period is added to the ten days of non-excludable delay between the filing of the indictment and the "ends of justice" continuance, at least 135 days of non-excludable delay occurred between the indictment and the trial. In these circumstances, we must conclude that the district court erred in concluding that the Speedy Trial Act was not violated.

■ We emphasize that our conclusion would be different if the delay in this case had resulted from the pendency of the motion to dismiss. "*Any* period of delay *resulting from*" any pretrial motion is excludable "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, the motion," 18 U.S.C. § 3161(h)(1)(F) (emphasis added), "*whether or not* a delay in holding that hearing is 'reasonably necessary.'" *Henderson*, 476 U.S. at 330, 106 S.Ct. at 1877 (emphasis added). Where delay in commencing a trial results from the pendency of a motion (as when the district court holds off trial pending a hearing on the motion), the delay will automatically be excluded from the Speedy Trial Act calculation, no matter how unreasonable or unnecessary that delay might seem. *See id.* at 326–30, 106 S.Ct. at 1874–77; *United States v. Aviles–Alvarez*, 868 F.2d 1108, 1112

(9th Cir.1989).[6] Here, however, that causal relationship was reversed: the pendency of the motion did not delay the start of the trial; rather, the delay in the commencement of the trial caused the delay in hearing the motion. According to the plain terms of the statute, the exclusion in § 3161(h)(1)(F) does not apply here.

### B.

■ Because we conclude that the excessive pretrial delay in this case violated the Speedy Trial Act, we must order that the indictment be dismissed. *See* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant."). The only remaining question is whether the indictment should be dismissed with or without prejudice. Although our usual practice is to remand to allow the district court to make this determination in the first instance, *see, e.g., Jordan,* 915 F.2d at 566, we have discretion to decide the issue ourselves when it arises for the first time on appeal, all relevant facts are before us, and the circumstances of the case dictate a prompt determination of whether to dismiss with or without prejudice. *See United States v. Velasquez,* 890 F.2d 717, 720 (5th Cir.1989); *United States v. Stayton,* 791 F.2d 17, 21 (2d Cir. 1986) (" '[A] remand for a hearing should not be routinely ordered in a case like this where the issue of whether dismissal should be with or without prejudice arises for the first time on appeal, the trial court having denied the motion to dismiss.' ") (quoting *United States v. Tunnessen,* 763 F.2d 74, 79 (2d Cir.1985)). We conclude that this case warrants such an exercise of our discretion.

■ The Speedy Trial Act requires us to consider three factors, "among others," in deciding whether dismissal should be with or without prejudice:

> the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice.

18 U.S.C. § 3162(a)(2). "As is plain from this language, courts are not free simply to exercise their equitable powers in fashioning an appropriate remedy, but, in order to proceed under the Act, must consider at least the three specified factors." *United States v. Taylor,* 487 U.S. 326, 333, 108 S.Ct. 2413, 2417, 101 L.Ed.2d 297 (1988). The choice of whether to dismiss with or without prejudice depends on a careful application of the statutorily enumerated factors to the particular case; there is no presumption in favor of either sanction. *See id.* at 334, 108 S.Ct. at 2418.

■ Considering each of the statutory factors as they apply to this case, we conclude that Clymer's indictment must be dismissed with prejudice. The first factor is "the seriousness of the offense." The offenses of which Clymer was convicted (conspiracy to distribute and aiding and abetting the manufacture of methamphetamine) are undoubtedly serious. However, this fact must be weighed against "the seriousness of the delay," *Stayton,* 791 F.2d at 21 (citing *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984)), as well as the rest of the other two statutory factors. We conclude that in this case the concerns regarding those other factors significantly outweigh the seriousness of Clymer's offense.

With respect to the second factor, we begin with the fact that "the sheer length of the

6. There are at least two qualifications to the broad statement in the text. First, delay resulting from pending motions will not be excluded if the defendant shows that he "attempted unsuccessfully to obtain hearings on the pretrial motions or that hearings were 'deliberately refused with intent to evade the Speedy Trial Act.' " *United States v. Gonzales,* 897 F.2d 1312, 1316 (5th Cir.1990) (quoting *United States v. Welch,* 810 F.2d 485, 488 (5th Cir.), *cert. denied,* 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987)), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991). Second, where a particular period of pretrial motion delay violates or is rendered non-excludable by a district court's plan for achieving the prompt disposition of criminal cases, implemented as required by 18 U.S.C. § 3165 and Fed.R.Crim.P. 50(b), that period of delay will not be excluded from the 70–day calculation. *See Henderson,* 476 U.S. at 328, 106 S.Ct. at 1875–76.

period involved," *Stayton,* 791 F.2d at 21, weighs heavily in favor of a dismissal with prejudice. As the Supreme Court has recognized, the length of a delay standing alone is a significant "measure of the seriousness of the speedy trial violation." *Taylor,* 487 U.S. at 340, 108 S.Ct. at 2421. Here, Clymer remained under the cloud of a pending indictment for 522 days—nearly one and a half years. Even giving the government the benefit of every doubt, about five months of this period was not excludable under the Act. Were we forced to decide how much of the delay is actually excludable, we might conclude that the non-excludable delay is considerably more than that. However, even a delay of five months strongly implicates the serious concerns articulated by Justice White in his concurring opinion in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

> [I]nordinate delay between public charge and trial ... wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."

*Id.* at 537, 92 S.Ct. at 2195 (White, J., concurring) (quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)).

Moreover, in this case we need not speculate about whether the long pretrial delay caused harm, for Clymer hâs made a showing of actual prejudice, both "in terms of his ability to prepare for trial" and in terms of "the restrictions on his liberty." *Taylor,* 487 U.S. at 340, 108 S.Ct. at 2421. By the time Clymer's portion of the case came to trial, one of his former co-defendants, who had agreed to testify on his behalf, could no longer be located. Although we cannot be certain that Clymer would have been able to locate this witness absent the 522–day delay, we agree with Clymer that there is at least a significant chance that the court would have been able to serve her with a subpoena if the case had come to trial while she was still under the jurisdiction of the Bureau of Prisons. More important, Clymer was incarcerated for the entire pretrial period. He therefore suffered significant actual prejudice to his liberty. As the Court made clear in *Taylor,* this fact, as well, weighs in favor of prohibiting reprosecution. *See id.* at 340–41, 108 S.Ct. at 2421–22; *id.* at 344, 108 S.Ct. at 2423 (Scalia, J., concurring).

Finally, we must consider the third enumerated factor in § 3162(a)(2): "the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." In part, the Speedy Trial Act violation here resulted from a basic misunderstanding of the appropriate use of the "ends of justice" exclusion. *Pollock* and *Frey,* both decided in 1984, made clear that open-ended "complexity" determinations would not suffice to toll the speedy trial clock, and that district courts could not invoke the "ends of justice" provision retroactively. Yet five years after these cases were decided, the district court appeared unaware of their requirements when it made a "complexity" finding which was not specifically limited in time. The district court appeared to remain unaware of the requirements of our case law in 1991, when it retroactively declared that the complexity of the proceedings had tolled the Speedy Trial Act. Even in 1993, *nine years* after we decided *Pollock* and *Frey,* the government's brief in this case sought to defend the district court's actions on the basis of its open-ended "complexity" finding.

In short, the facts of this case demonstrate to us that, a decade after we clearly set forth the procedural requirements for the use of the "ends of justice" exclusion, the day-to-day practice in at least some courts and prosecutor's offices remains unaffected. While not every violation of the Act requires dismissal with prejudice, *see Taylor,* 487 U.S. at 342, 108 S.Ct. at 2422, we believe that the Act's most severe sanction is appropriate where the surrounding circumstances lead us to conclude that district courts and United States Attorneys' offices have failed to recognize or implement our long-standing precedents. We conclude that, on the facts of this

case, dismissal with prejudice best comports with the administration of the Act.

Dismissal with prejudice also serves the more general interest in the administration of justice. Clymer was detained pending trial. He was also incarcerated for all but the last five months of the three-year delay on appeal.[7] Thus, he had served nearly five years of his twenty year sentence when we filed an order on November 3, 1993, releasing him. Yet if he had agreed to the plea bargain his co-defendant Schlichter entered into, Clymer would have been required to serve a *maximum* of *four* years. Despite the differences in their sentences, Schlichter appears to have been far more of a central participant in the scheme than Clymer (who was convicted only of conspiracy and aiding and abetting, but was acquitted of any substantive offenses). Under the circumstances of this case, we conclude that Clymer has already paid a significant debt to society. Clymer's case has sapped the resources of the courts, the United States Attorney's Office, and court-appointed attorneys for more than five years. The administration of justice would be ill-served by allowing yet another trial and probable appeal at this late date.

Considering all of the facts of this case, and applying all of the statutory factors, we conclude that the government should not be permitted to reprosecute Clymer. Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED with instructions to dismiss the indictment with prejudice.

---

7. There were two principal causes of the long delay on appeal: (1) the inability of Clymer's prior court-appointed counsel to prosecute this appeal in a timely fashion; and (2) the court reporter's difficulty in expeditiously preparing the more than twenty volumes of trial transcripts. The government's responsibility for this delay also weighs in favor of barring reprosecution. *See Coe v. Thurman,* 922 F.2d 528, 531 (9th Cir.1990) ("[F]ailures of court-appointed counsel and delays by the court are attributable to the state.").