**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Beau Lee LEWIS, Defendant–
Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Beau Lee Lewis, Defendant–Appellant.**

**Nos. 01–10666, 01–10668.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 2003.

Filed Nov. 13, 2003.

Dean D. Paik, San Francisco, CA, for the defendant-appellant.

Kelly A. Johnson, Acting Assistant Attorney General; Kevin V. Ryan, United

States Attorney, San Francisco, CA; Dennis Michael Nerney, Assistant United States Attorney, San Francisco, CA; Todd D. Aagaard, Attorney, United States Department of Justice, Washington, DC, for the plaintiff-appellee.

Before REINHARDT, SILER,* and HAWKINS, Circuit Judges.

PER CURIAM Opinion. Dissent by Judge SILER.

## OPINION

PER CURIAM.

Beau Lee Lewis was convicted of a number of offenses related to his role in a wildlife smuggling operation. He was sentenced to total of 36 months in prison and three years of supervised release. He appeals his convictions and sentences on several grounds, including that the district court erred in denying his motion to dismiss his indictments under the Speedy Trial Act ("the Act"), 18 U.S.C. § 3161(c)(1). We reverse and remand on the basis of the Act and do not reach the other grounds.[1]

**Background**

Lewis's conviction arises from an extensive undercover government investigation of Malaysian wildlife smuggler Anson Wong. In an effort to gain Wong's trust, the government purchased several ship-ments of legal reptiles from him through a California-based front, PacRim Import/Export Company. To dispose of the animals it acquired, the government placed an advertisement in *Reptiles* magazine seeking buyers. Lewis, an 18–year–old herpetologist who ran a small reptile business out of his Buckeye, Arizona home, responded to one of these advertisements.

Lewis developed a cordial business relationship with Special Agent George Morrison, whom he came to know as George Ross. The two spoke with increasing frequency by telephone, and Morrison visited Lewis in Arizona on a few occasions. After Lewis questioned Morrison about acquiring gray's monitor lizards, a protected species, the two eventually began to discuss the illegal importation of wildlife. About three months later Lewis told Morrison that he was importing lizards from Wong's operation in Malaysia and that he had spoken with Wong personally many times.

Soon enough Lewis and a group of co-conspirators, which included Wong, were violating federal wildlife and importation laws under the direct scrutiny (and with the participation) of Morrison. These offenses eventually resulted in Lewis's conviction of nine counts of illegal importation and false labeling of wildlife in violation of the Lacey Act, 16 U.S.C. § 3372, one count of laundering money in violation of 18 U.S.C. § 1956, six counts of smuggling merchandise into the United States in violation of 18 U.S.C. § 545, and two counts of conspiracy in violation of 18 U.S.C. § 371.

Lewis was first indicted on July 8, 1998, and arraigned on October 1, 1998.[2] The

---

*The Honorable Eugene E. Siler, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The district court consolidated for trial two related criminal proceedings against Lewis. Both cases are before us on appeal, and we treat them together. In a separate unpublished memorandum disposition filed concur-

rently herewith we address the appeal of Lewis's co-defendant Robert Paluch.

2. A separate indictment was filed in the district court of southern Texas against Lewis and another co-conspirator on January 12, 1999 for related smuggling activities. The case was transferred to the northern district

Act generally requires that a trial begin within 70 days of the filing date of the indictment or the defendant's first appearance before a judge, whichever is later. 18 U.S.C. § 3161(c)(1). Under the general statutory rule, therefore, the trial would have commenced no later than December 10, 1998, that is, 70 days after the arraignment. The Act, however, specifies certain situations in which the district court may exclude time from the calculus. In Lewis's case, the government secured the indictment and arraignment long before it was ready to begin trial. The principal reason the government did not wish to commence the prosecution promptly was that it intended to try Lewis together with his co-conspirators, including Wong, who was still at large. It was not until September 1998 that the government lured Wong to Mexico, where he was taken into custody by the Mexican authorities and began fighting extradition.

On October 6, 1998, the court ordered the first in what would become a long series of continuances of trial. Another continuance was ordered on December 3, 1998. In both these instances the court excluded the delay from the speedy trial calculus on the basis of the complexity of the case. *See* 18 U.S.C. § 3161(h)(8).

On February 11, 1999, Lewis informed the district court that he was ready for trial and requested that the trial date be set within 70 days. The government, however, requested another 30–day continuance, stating that it hoped to extradite Wong within that time. The district court granted the government's motion and excluded the time between February 11, 1999, and March 18, 1999, over Lewis's objection.

On March 18, 1999, Lewis requested a trial date of April 19, 1999. The government, however, requested a further contin-

uance, informing the court that, while it was making progress towards arranging extradition for Wong, it had not yet succeeded. The court set a trial date of June 7, 1999, with pre-trial motions, including motions in limine, to be heard on May 6, 1999.

By April 15, 1999, Wong had still not been extradited. The government filed a motion on that date to continue the June 7, 1999, trial date "due to the complexity of the case and in order to secure the presence of unsevered co-defendant ... Wong." Lewis objected, asserting that the government had already been shown to be unduly optimistic in its expectation of extraditing Wong in a timely manner. He also argued that the case was not exceptionally complex and that it was not necessary to try Lewis and Wong together. He informed the court that he would be ready to stipulate to essentially all the complex factual and legal issues that might pertain to Wong, because his defense would rest entirely on entrapment.

Also on April 15, 1999, the government filed a motion to present Agent Morrison's testimony non-sequentially; Lewis opposed the motion. This motion, which would remain pending for nearly 20 months, later served as the basis for the exclusion of time for Speedy Trial Act purposes that we review today.

At a May 6, 1999, hearing the district court granted the government's motion for continuance. It rescheduled trial to begin on September 20, 1999, and set a final pretrial conference for September 2, 1999. It again excluded the time because of complexity and because of Wong's continuing absence. Having rescheduled the trial, it also put off the determination of the government's motion to allow Morrison to testify non-sequentially until the September

of California and consolidated for trial with     the earlier proceedings on June 16, 1999.

2, 1999, conference. The court suggested that it would be better able to make a determination on that issue after it learned "what stipulations you've entered into exactly."

Two other defendants were added to the indictment on July 14, 1999, including Robert Paluch, the only co-defendant with whom Lewis would ultimately be tried. The addition of these defendants caused yet another delay in the trial while Paluch and the government prepared their cases. On August 11, 1999, the court granted a continuance for purposes of that preparation. Lewis's counsel objected, insisting that he was ready for trial. Counsel also informed the court that on August 1, 2000, he would be moving to the Hague to work with the International War Crimes Tribunal and feared that repeated delay could force him to withdraw as counsel to Lewis. The Act, however, allows for the exclusion of a reasonable period of delay when a defendant is joined for trial with a codefendant. § 3161(h)(7). The court noted that Lewis had made no motion to sever and granted the continuance. Lewis responded by orally moving to sever, but the court declined to address the motion at the hearing, instructing Lewis to file written papers instead.

On December 27, 1999, Lewis's counsel filed a written motion to sever. He pointed out scheduling conflicts with Paluch's counsel and reminded the court of his August 2000 departure for the Netherlands. At a January 13, 2000, hearing, the court denied the motion to sever and scheduled the trial for July 3, 2000, with pretrial conference on June 16, 2000. The subject of a speedy trial was not discussed at the hearing.

On May 9, 2000, Paluch moved to continue the trial date 60 days. Lewis's counsel objected and renewed his motion to sever, reminding the court that he would be leaving for the Netherlands in August. On June 8, 2000, the court heard the motion. Lewis's counsel stated that he would be forced to withdraw if trial was again delayed. The court denied the severance motion and vacated the trial date. It excluded time under the Act on the ground that no motion to sever had been granted. Lewis's counsel was forced to withdraw.

Wong was finally extradited on August 30, 2000. On December 13, 2000, he pleaded guilty and agreed to cooperate with the government against Lewis.

Lewis's new counsel needed time to prepare, so a new trial date was set for January 22, 2001, with pretrial conference on January 9, 2001.

On December 20, 2000, Lewis moved to dismiss the indictments due to violations of the Act. The court denied the motion, finding that only 28 days between the initial arraignment and the resolution of the motion for dismissal were not excludable. Much of this time was excluded because the court was awaiting Wong's extradition. The court also found a nearly 20–month period excludable due to the pending government motion to present Morrison's testimony non-sequentially.[3] That motion had never been resolved because the court chose to schedule it for resolution at the pretrial conference that it repeatedly postponed because it was necessary to postpone the trial itself.

At pretrial conference on January 11, 2001, the court considered a number of motions, including the government's motion to present Morrison's testimony in installments. It granted that motion with-

---

**3.** For the period of January 13, 2000 to May 9, 2000, this pending motion was the only basis for exclusion of time.

out inquiring whether the parties had entered into any stipulations.

The trial finally commenced on February 20, 2001—two years, four months, and 19 days after Lewis's initial arraignment, and two years and nine days after Lewis informed the court that he was ready for trial—and six months after Lewis's counsel had departed for the Hague to work with the International War Crimes Tribunal.

## DISCUSSION

As noted above, the Speedy Trial Act generally requires that trial begin within 70 days of a defendant's indictment or his first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1).[4] If trial does not begin within the requisite time period and the defendant moves for dismissal prior to trial, the court must dismiss the indictment, either with or without prejudice. 18 U.S.C. § 3162(a)(2). Other provisions of the Act, however, allow for tolling of the 70-day limit under specified circumstances. One such provision allows the district court to exclude any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(F).

The district court relied on this provision to exclude the entire period from April 15, 1999, when the government filed its motion to allow Morrison to testify non-sequentially, until January 11, 2001, when it granted that motion. For much of that nearly 20-month period, the district court justified the exclusion on other grounds as

well. For 117 days, however—from January 13, 2000, until May 9, 2000—the pending motion was the sole basis for the exclusion. Lewis challenges the exclusion of the 117 days, arguing that the delay did not "result[ ] from any pretrial motion." § 3161(h)(1)(F).

We begin by noting what this case is *not* about: it is not about the reasonableness of the court's delay in ruling on the government's motion. The Supreme Court has made very clear that Section 3161(h)(1)(F) does not require that the delay be reasonable to be excluded. *Henderson v. United States,* 476 U.S. 321, 327, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). *Henderson* did not, however, discuss the statutory requirement that excludable delay is that delay *"resulting from* any pretrial motion," § 3161(h)(1)(F)(emphasis added), as the parties apparently did not dispute that the delay of the trial was caused by the delay in reaching the pretrial motion. Indeed, as we have noted ourselves, "in the ordinary case all pretrial delay that coincides with the pendency of a motion will occur as a result of that motion (because the district court will ordinarily hold off the trial date until it decides the motion)." *United States v. Clymer,* 25 F.3d 824, 830 (9th Cir.1994).

But, of course, occasionally there are exceptional cases. *Clymer* was such a case. There, the district court determined that it could not decide Clymer's motion to dismiss for outrageous government conduct until after it had heard the evidence at trial, and continued the hearing until after the trial. *Id.* at 829–830. Clymer's

---

4. The Act provides as follows:

  In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has

appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate on a complaint, the trial shall commence within seventy days from the date of such consent.
  18 U.S.C. § 3161(c)(1).

motion was the only pending motion at the time, and this court held that after the district judge had decided to postpone the hearing on that motion until after trial, the motion essentially dropped out of the case and any delay in the trial could not have possibly resulted from the pending motion. *Id.* at 830.

In the years since *Clymer* was decided, its holding has been limited to situations in which a motion is postponed until after trial. *See, e.g., United States v. Gorman,* 314 F.3d 1105, 1115 (9th Cir.2002); *United States v. George,* 85 F.3d 1433, 1436 (9th Cir.1996); *United States v. Springer,* 51 F.3d 861, 865 (9th Cir.1995).[5] However, as this court recognized in *Gorman, Clymer* also indicated that even if a delay in trial "results from" a pending motion, we should also consider whether the defendant made "unsuccessful attempts 'to obtain hearings on the pretrial motions.'" *Gorman,* 314 F.3d at 1115 (quoting *Clymer,* 25 F.3d at 831 n. 6).

██ In this case, the government's motion related only to the order in which testimony would be presented at trial. The hearing was repeatedly postponed without the slightest discussion, because the court wished to hear the motion at the pretrial conference, which was repeatedly rescheduled until several weeks before the most recently rescheduled trial date.[6] Although Lewis did not explicitly request the court to hear the government's pending motion, Lewis made numerous motions seeking a prompt trial, indicated a readiness to proceed to trial, and repeatedly requested the court not to continue the trial further, thus implicitly requesting that the pretrial conference be held and the motion be heard.[7] We therefore hold that in the circumstances of this case, where it is clear that the delay in the trial caused the delay in the hearing, rather than the other way around, *and* where the defendant repeatedly asked the court to set the case for trial and was otherwise ready to proceed to trial, the government's pending (and relatively unimportant) pretrial motion could not serve as a basis for exclusion for the period of January 13, 2000 to May 9, 2000. As the government's motion was the only basis for exclusion during this time frame, which itself exceeds 70 days, Lewis was therefore denied his right to a speedy trial.[8]

Because the delay violated the Speedy Trial Act, Lewis's convictions must be reversed, his sentences vacated, and his indictments dismissed. 18 U.S.C.

---

5. In our view, the language in *Clymer* was not so limited; nonetheless, we are constrained to follow these precedents and reconcile them as best possible.

6. The government argues that, because the district court wished to know of any stipulations between the parties before deciding the government's motion, the cause for the delay was the failure to submit stipulations earlier. We disagree. The record does not reflect that the district court continually delayed the hearing on the motion because stipulations had not been filed. Rather, the hearing was delayed because the trial was delayed. If stipulations were not filed, that too was because of the delay in the trial. Indeed, in the end, the court decided the motion without any stipulations having been filed.

7. Had this been Lewis's motion and not the government's, we might require a more explicit request to hear the motion. We might also expect a more specific request if the motion were obviously a significant one, such as a motion to suppress or a motion in limine regarding the use of prior bad acts evidence. But the government's motion was so minor that we are not convinced it was on anyone's mind, including the government's, at the times the trial was continued.

8. We also note, although it does not affect the outcome on this appeal, that the delay had a substantial prejudicial effect on the defendant, who was, as a result, deprived of his right to be represented by counsel of his choice.

**1122**

§ 3162(a)(2); *United States v. Hall,* 181 F.3d 1057, 1063 (9th Cir.1999).[9] Whether Lewis may be re-indicted depends on whether the dismissal is with or without prejudice. We remand to the district court to decide which type of dismissal is appropriate. *Hall,* 181 F.3d at 1063.

**REVERSED and REMANDED.**

SILER, Circuit Judge, dissenting:

I respectfully dissent, not because I condone the numerous delays in commencing the trial, as related by the majority opinion, but because I think that precedent in this court precludes the dismissal of the indictments.

As the majority recognizes, there is ample authority in this circuit after the decision in *United States v. Clymer,* 25 F.3d 824 (9th Cir.1994), explaining that the decision in *Clymer* is limited to cases in which a motion is postponed until after trial. *See, e.g., United States v. George,* 85 F.3d 1433, 1436 (9th Cir.1996)("[T]he exception in ... *Clymer* ... applies only when a motion is decided after trial.") *Accord United States v. Gorman,* 314 F.3d 1105, 1115 (9th Cir.2002); *United States v. Springer,* 51 F.3d 861, 865 (9th Cir.1995). In each of these cases following *Clymer,* motions *in limine,* similar to the motion in this case, were filed by either the prosecution or the defense.

The majority quotes language from *Gorman,* 314 F.3d at 1115, that we should also consider whether there was an effort by the defendant "to obtain hearings on the pretrial motions." Lewis made no explicit requests. Although he did request a speedy trial, I would not find that it is an implicit request for a ruling on the pending motion. Therefore, I would not dismiss

the indictments but would affirm the convictions.

---

9. Lewis brings other Speedy Trial Act challenges as well, which, because we reverse on this § 3161(h)(1)(F) ground, we do not reach.