**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

RICK K. VO,
          *Defendant-Appellant.*

No. 03-10699

D.C. No.
CR-02-00411-ACK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted
November 4, 2004—Honolulu, Hawaii

Filed June 27, 2005

Before: Robert R. Beezer, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

7627

**COUNSEL**

Peter C. Wolff, Jr., Federal Public Defender, and Michael A. Weight, Assistant Federal Public Defender, Honolulu, Hawaii, for the defendant-appellant.

Edward H. Kubo, Jr., United States Attorney, and Thomas Muehleck, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

---

## OPINION

BYBEE, Circuit Judge:

Petitioner Rick Vo ("Vo") and his wife Brenda ("Brenda") were indicted for conspiring to possess more than fifty grams of methamphetamine with intent to distribute and for aiding and abetting each other in the possession of more than fifty grams of methamphetamine with intent to distribute. *See* 8 U.S.C. § 841(a)(1); 21 U.S.C. § 846. The Vos were arrested after an employee of Mail Boxes, Etc., notified the Federal Bureau of Investigation ("FBI") that a suspicious package had been dropped off for shipment to California by Federal Express. The shipping label stated that the shipment contained hair products and makeup, and the employee opened the box pursuant to store policy to ensure that it did not contain any aerosol products. Realizing that the package was suspicious (because it did not contain hair products but rather contained fifteen pounds of an unknown substance), the store clerk notified the FBI, and the FBI obtained a search warrant from a federal magistrate judge. The FBI discovered four gallon sized bags of a substance testing positive for methamphetamine. The Vos were arraigned and indicted in October 2002 for charges stemming from the methamphetamine possession. In April 2003, Brenda pleaded guilty to conspiracy. A jury convicted Rick Vo in May 2003 on one count, aiding and abetting possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Vo raises three claims on appeal. First, Vo claims that the district court erred by denying his Speedy Trial Act motion to dismiss under 18 U.S.C. § 3161, because more than seventy

days elapsed between the filing of the government's indictment and Vo's trial. Second, Vo claims that the district court erred by allowing Brenda, his wife, to testify about marital communications in violation of his marital communications privilege. Third, Vo argues that the district court erred in admitting evidence of a thirteen-year-old drug conviction in violation of Federal Rules of Evidence 401, 402, 403, and 404(b). Finding no error, we affirm the conviction. Vo also submitted a Rule 28(j) letter regarding the upward enhancement of his sentence under the federal sentencing guidelines by the district court. Because Vo did not challenge his sentence on Sixth Amendment grounds in the district court, we grant a limited remand pursuant to *United States v. Ameline*, No. 02-30326, 2005 WL 1291977, at \*11 (9th Cir. June 1, 2005) (en banc).

## I.   SPEEDY TRIAL ACT

**[1]** The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (2004). The Act provides that certain "periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence." 18 U.S.C. § 3161(h). The list of excludable delays includes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F); *see, e.g.*, *United States v. Springer*, 51 F.3d 861, 865 (9th Cir. 1995) (motion in limine); *United States v. Wirsing*,

867 F.2d 1227, 1231 (9th Cir. 1989) (motion to detain a defendant in pretrial confinement). "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.' " *Henderson v. United States*, 476 U.S. 321, 330 (1986).

In this case there was a 215-day delay between the filing of the indictment and the filing of Vo's motion to dismiss. Of this period, Vo does not contest the exclusion of some 143 days, leaving more than 70 days that are not excludable. In this appeal he argues that the district court should not have excluded twelve days between October 10-21, 2002. If that period is excluded, then Vo's trial was held within the confines of the Speedy Trial Act. On the other hand, if those days count for Speedy Trial Act purposes, then Vo was not tried in a timely fashion and the Act requires that the court dismiss the indictment either with or without prejudice. 18 U.S.C. § 3161(a)(2); *see also United States v. Daychild*, 357 F.3d 1082, 1090 (9th Cir. 2004) ("If trial does not commence within the seventy-day limit, after setting aside excluded time, the court must dismiss the indictment . . . . Thus, failure to comply with the Act has grave consequences."); *United States v. Hardeman*, 249 F.3d 826, 828-29 (9th Cir. 2001) (per curiam) ("The Act's 70-day limit was therefore exceeded, *see* 18 U.S.C. § 3161(c)(1), and the indictment against [defendant] must be dismissed.").[1]

Rick and Brenda Vo first appeared in district court, where the government moved for their detention, on October 7, 2002. The district court set a detention hearing for three days

---

[1]This court reviews *de novo* a district court's application of the Speedy Trial Act. *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002); *United States v. Springer*, 51 F.3d 861, 864 (9th Cir. 1995). The court reviews the district court's factual findings under the Speedy Trial Act for clear error. *United States v. Brickey*, 289 F.3d 1144, 1150 (9th Cir. 2002).

later, on October 10, and remanded them to the custody of the U.S. Marshal's Service. On October 9, the grand jury returned an indictment against the Vos. They appeared the following day to be arraigned and to request a continuance of the detention hearing from October 10 to October 21 to present additional information from the Pretrial Services Officer. The district court agreed to the continuance and set a trial date for December 10. On October 21, the district court held the detention hearing and granted the government's motion to detain the defendants.

**[2]** Vo argues that the twelve days between October 10 through October 21, 2002, were not excludable from computation under the Act. He claims that, under *United States v. Clymer*, 25 F.3d 824, 830 (9th Cir. 1994), a motion that does not result in *actual* pretrial delay is unexcludable: "[Section] 3161(h)(1)(F) applies only when the delay in bringing the case to trial is the *result* of the pendency of a pretrial motion." *Id.* (emphasis in original).

We do not read *Clymer* to support Vo's argument. In *Clymer* the defendant had languished through a 522-day delay, which the government claimed was entirely excludable. The panel's opinion granted some of the excludable delay, but held that Clymer's motion to dismiss the indictment for outrageous government conduct, which the district court decided to refrain from ruling on until *after* the trial, did not constitute excludable delay under the Act. *Id.* at 831-32. We found that "[i]n effect, the district court denied the motion without prejudice to the filing of a renewed submission after the conclusion of the trial." *Id.* at 830. If we had held otherwise in *Clymer*, the government would have had *carte blanche* in the preparation of its case, so long as it had some motion pending before the court, even if resolution of the motion had been suspended until after the trial. We noted that in the ordinary case "[w]here delay in commencing a trial results from the pendency of a motion (as when the district court holds off trial pending a hearing on the motion), the delay will automatically

be excluded from the Speedy Trial Act calculation, no matter how unreasonable or unnecessary that delay might seem." *Id.* at 830. But in *Clymer* "that causal relationship was reversed: the pendency of the motion did not delay the start of the trial; rather, the delay in the commencement of the trial caused the delay in hearing the motion." *Id.* at 831.

**[3]** *Clymer* did not, and did not purport to, overrule our prior cases holding that the time a motion is pending is excludable even when the pendency of the motion causes no actual delay in the trial. *United States v. Crooks*, 826 F.2d 4, 5 (9th Cir. 1987); *United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir. 1984); *see also Daychild*, 357 F.3d at 1095 ("[T]he district court's five-day exclusion of the period between [defendant's] arraignment and the detention/bond hearing held at his request . . . was proper."). We, thus, do not read *Clymer* as adopting the broad rule Vo advocates.[2] As we

---

[2]Our sister circuits have also reached the same conclusion. *See, e.g.*, *United States v. Cobb*, 697 F.2d 38, 46 (2d Cir. 1982) ("We reject [the district judge's] causation analysis which would require that to be excludable under [§ 3161(h)(1)(F)] a particular pretrial motion must have caused an actual delay in the commencement of the trial. We accept, instead, the government's view that a pretrial motion triggers an automatic exclusion, with the qualification, however, that the amount of time eligible for exclusion may not be extended by postponing the hearing date or other disposition of the motion beyond what is reasonably necessary for processing the motion."), *overruled by United States v. Matsushita*, 794 F.2d 46, 51 (2d Cir. 1986) (holding that the "reasonableness standard" stated in *Cobb* is abrogated by *Henderson*, and stating that "any time consumed between the filing of a pretrial motion and the conclusion of the hearing on that motion is excludable *without regard to the reasonableness of the length of time*") (emphasis added); *United States v. Novak*, 715 F.2d 810, 813 (3d Cir. 1983) ("[T]he legislative history of the Speedy Trial Act clearly indicates that Congress intended the exclusions under section 3161(h)(1)-(7) to operate without requiring a factual determination of causation."), *overruled by United States v. Felton*, 811 F.2d 190, (3d Cir. 1987) (holding that *Henderson* abrogated the "reasonableness standard" that the Third Circuit previously imposed in *Novak*); *United States v. Velasquez*, 802 F.2d 104, 105-06 (4th Cir. 1986) ("[G]iven the [Supreme Court's] ruling in [*Henderson v. United States*] that "all time" is to be excluded, the cau-

recently observed, "[i]n the years since *Clymer* was decided, its holding has been limited to situations in which a motion is postponed until after trial." *United States v. Lewis*, 349 F.3d 1116, 1121 (9th Cir. 2003) (per curiam) (citing *United States v. Gorman*, 314 F.3d 1105, 1115 (9th Cir. 2002); *United States v. George*, 85 F.3d 1433, 1436 (9th Cir. 1996); Springer, 51 F.3d at 865). Except in the unusual case, such as *Clymer*, " 'a pretrial motion triggers an automatic exclusion,' " *Van Brandy*, 726 F.2d at 551 (citing *United States v. Cobb*, 697 F.2d 38, 46 (2d Cir. 1982)), even though no actual delay results, *Crooks*, 826 F.2d at 5.

Our holding provides a clear rule for district courts and counsel to follow, it puts counsel on notice from the outset as to what is excludable, and it avoids gamesmanship. We affirm the district court's ruling that the detention motion pending for twelve days between October 10 and October 21, 2002, was excludable delay and that Vo's Speedy Trial Act motion was properly denied.

---

sation argument must also be rejected under § 3161(h)(1)(F)."); *United States v. Brim*, 630 F.2d 1307, 1311-12 (8th Cir. 1980) ("The district court considered the theories of each side and concluded that the Act intended automatic exclusion. This interpretation is consistent with the language of the Act, as amended, and with the apparent purpose of the amendment."); *United States v. Vogl*, 374 F.3d 976, 986 (10th Cir. 2004) ("Although we have not previously reached this precise question of whether 'actual delay' must exist before excluding time under § 3161(h)(1), we find the reasoning of our sister circuits persuasive and consistent with our prior precedent . . . [and] hold[ ] that no 'actual delay' is required for a district court to exclude time under § 3161(h)(1)(F) . . . ." ); *United States v. Stafford*, 697 F.2d 1368, 1371-72 (11th Cir. 1983) ("We agree with this reasoning [that § 3161(h)(1)(F) creates automatic exclusions] and conclude that the trial court in this case erred in deciding that the exclusions are not automatic."); *United States v. Wilson*, 835 F.2d 1440, 1443 (D.C. Cir. 1987) ("[W]e join not only the Second Circuit but several others finding that the exclusion of the time between the filing and disposition of pretrial motions under § 3161(h)(1)(F) is automatic and need not cause actual delay of the trial.") (citing *Van Brandy*, 726 F.2d at 551).

## II.   MARITAL COMMUNICATIONS PRIVILEGE

Vo argues that the district court should not have permitted Brenda to testify about their marital communications. Vo failed to object at trial, so he must argue here that the admission of her testimony was plain error.[3]

Brenda testified that Vo had asked her to send a box from a shopping center near Playa del Rey, California, to Honolulu, in September 2001. Although she initially declined to send the box because Vo would not inform her of the contents, she later agreed to Vo's demands. She testified that when Vo handled the box, he handled it in a way that would avoid leaving fingerprints. Vo also had written the name of "Linda Chang" as the sender on the box when he gave the box to Brenda to send. Brenda testified that a month later, in October 2001, Vo asked her to send another box to Honolulu, also with the name "Linda Chang" as the sender. Brenda also testified to other facts regarding the package recovered by the FBI and DEA during trial. Additionally, Brenda testified that in 2002, she observed Vo's brother, Khanh Vo, give a United Parcel Service agent a box to send, and testified that she saw Khanh carry the box so as to avoid leaving fingerprints. Finally, Brenda testified that in 2002, while staying at her parents house in Hawaii, Vo asked her to go see a person named "Crash Om" to pick up some money that Vo was owed for drugs.

[4] There are two types of marital privileges that may be implicated when spouses testify against each other. "The first permits a witness to refuse to testify against his or her spouse"

---

[3]This court reviews *de novo* the district court's construction of a federal rule of evidence. *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004); *United States v. Angwin*, 271 F.3d 786, 798 (9th Cir. 2001). Federal Rule of Evidence 501 provides that "the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law," and applies to the marital communications privilege at issue in this case.

while they are married. *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 53 (1980)). This privilege is not implicated in this case because Brenda elected to testify against Vo. *See id.* The second privilege, the marital communications privilege, provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged." *Wolfle v. United States*, 291 U.S. 7, 14 (1934). We have held that "[t]he privilege (1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications, *i.e.*, those not made in the presence of, or likely to be overheard by, third parties." *Montgomery*, 384 F.3d at 1056 (citing *United States v. Marashi*, 913 F.2d 724, 729-30 (9th Cir. 1990)). We construe the marital communications privilege narrowly, to promote marriage without thwarting the administration of justice. *Id.*; *Marashi*, 913 F.2d at 730.

The marital communications privilege is subject to an important exception. The privilege does not shield marital confidences when those confidences concern joint criminal activity. "[T]he marital communications privilege does not apply to statements made in furtherance of joint criminal activity." *Marashi*, 913 F.2d at 731. The exception has its own limits: Where, for example, the wife has "not become a participant at the time of her communications, no joint criminal activity ha[s] been undertaken," and the joint criminal activity exception does not apply. *Montgomery*, 384 F.3d at 1060; *see also United States v. Westmoreland*, 312 F.3d 302, 308 (7th Cir. 2002); *United States v. Bey*, 188 F.3d 1, 6 (1st Cir. 1999); *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992); *United States v. Estes*, 793 F.2d 465, 468 (2d Cir. 1986); *United States v. Mendoza*, 574 F.2d 1373, 1381 (5th Cir. 1978). We need not decide whether Brenda was a participant in joint criminal activity at the time of her communications, because Vo waived the privilege by failing to assert it at trial.

Vo argues that, by failing to assert the privilege during trial, he did not *waive* the marital communications privilege but rather that he *forfeited* his privilege. This is significant because Vo claims that the marital communications privilege is a *right*, not a privilege. As Vo correctly asserts, the court may review for plain error under *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc), where a *right* is forfeited in the trial court because it was not raised at all (as opposed, that is, to having been raised and waived). *See id.* at 844 (forfeited right reviewed for plain error).

**[5]** We have plainly held, however, that when the defendant "failed to object to his wife's testimony as to his communications when it was offered," he has waived the privilege. *United States v. Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972). Recently, we affirmed that "*Figueroa-Paz* stands for the rule that the marital communications privilege will be waived if an objection is not timely made." *Montgomery*, 384 F.3d at 1057. Because Vo neglected to assert the marital communications privilege during pretrial conference or to object at trial to Brenda's testimony on the basis of the marital communications privilege, he has waived the privilege. We therefore decline to review his claim of plain error.

## III.  EVIDENCE OF PRIOR CONVICTION

Finally, Vo argues that the district court erred when it admitted evidence that Vo was convicted in 1989 of two counts of selling cocaine.[4] The district court found that the conviction was similar to the current charge, that the evidence was being introduced to prove a material issue, and that the prior conviction was not too remote. It concluded that proba-

---

[4]We review for abuse of discretion a district court's decision to admit "other crimes" evidence, but the determination that evidence was within the scope of the rule governing "other crimes" evidence is reviewed *de novo*. *United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002) (per curiam) (citing FED. R. EVID. 404(b)).

tive value of the prior conviction substantially outweighed any unfair prejudice. *See* FED. R. EVID. 403, 404(b). Vo stipulated to the fact of his prior conviction, while reserving his objection for appeal. The district court instructed the jury to consider the prior conviction "only as it [bore] on his intent, knowledge, absence of mistake, and for no other purpose."

**[6]** Evidence of a prior conviction, wrong, or act is inadmissible under Rule 404(b) for the purpose of proving the character of a person or that a defendant acted in conformity with such character. FED. R. EVID. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "In making admissibility decisions, the [district] court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004) (citing *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)), *cert. denied*, 125 S.Ct. 508 (2004). Having made this determination, the district court must determine whether the probative value of admission outweighs the prejudice to the defendant. *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997); *see also United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989).

The government argues that it offered Vo's prior conviction as evidence of his intent, knowledge, and absence of mistake under Rule 404(b). Vo counters that the prior conviction was old and that it was not relevant to the charged act, because the charged act and prior conviction involve different material elements. The government points out that Vo's theory at trial was that Brenda was the drug dealer in this scenario[5] and that

---

[5]"[Brenda] was a clever girl . . . . The evidence is going to show Brenda knows how to cook crack. She knows how to cook dope. And the evidence

she implicated Vo because "by burning somebody else to get herself out from under her awful, awful situation . . . benefits [would] accrue." *United States v. Vo*, No. 02-00411ACK, Trial Transcript, 2-27, lines 21-23 (May 15, 2003) (opening argument by Vo's counsel). The government argues that it offered the evidence of the prior conviction to refute Vo's claims that he was merely an innocent pawn in Brenda's scheme.[6]

**[7]** "We have consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics." *United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir. 1982). When analyzing the similarity of prior drug crimes under FED. R. EVID. 404(b), we look to the type of activity undertaken, rather than the precise identity of the drugs, as the relevant factor. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1015 (9th Cir. 1995). Indeed, "[w]hen offered to prove knowledge, . . . the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992) (citing FED. R. EVID. 401). Additionally, we have found that a thirteen-year-old conviction is not too remote to be admitted under Federal Rule of Evidence 404(b). *See Ross*, 886 F.2d at 267; *see also United States v. Rude*, 88 F.3d 1538,

---

is going to show that she was involved with numerous people that cooked crack, sold crack, and that she was not some minor dealer." *United States v. Vo*, No. 02-00411ACK, Trial Transcript, 2-21, lines 11, 21-25 (May 15, 2003) (opening argument by Vo's counsel).

[6]"[A]cquit Rick Vo, and let the blame fall where it truly belongs, on the lady who pled guilty." *United States v. Vo*, No. 02-00411ACK, Trial Transcript, 2-29, lines 7-8 (May 15, 2003) (opening argument by Vo's counsel).

1550 (9th Cir. 1996) (holding an eight-year-old prior act admissible). The remoteness of Vo's conviction does not necessarily preclude admissibility, because "[t]his court has not identified a particular number of years after which past conduct becomes too remote." *Johnson*, 132 F.3d at 1283. Thus, if "[t]he prior act evidence in this case is sufficiently similar to the charged conduct" it may "render it probative despite the passage of time." *Id*.

**[8]** The district court did not abuse its discretion. Vo's prior conviction was evidence of his knowledge of drug trafficking and distribution in general. The conviction tended to show that Vo was familiar with distribution of illegal drugs and that his actions in this case were not an accident or a mistake. In addition, there is no issue about the sufficiency of evidence of the prior bad act because Vo was convicted in state court. *United States v. Arambula-Ruiz*, 987 F.2d 599, 603 (9th Cir. 1993). The district court "carefully weighed the probative value versus the prejudicial effect of the evidence" and issued appropriate limiting instructions to the jury, therefore properly exercising its discretion to admit the evidence. *United States v. Chea*, 231 F.3d 531, 535 (9th Cir. 2000). We therefore affirm the district court's admission of Vo's prior conviction.

## CONCLUSION

Vo's conviction is AFFIRMED. We REMAND to the district court solely for the purpose of sentencing consistent with *United States v. Ameline*, No. 02-30326, 2005 WL 1291977, at *11 (9th Cir. June 1, 2005) (en banc).