Filed 2/16/16  P. v. Gant CA2/7
Received for posting 2/17/16

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY GANT,<br><br>    Defendant and Appellant. | B261442<br><br>(Los Angeles County<br>Super. Ct. No. BA425476) |

————————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Kemalyan, Judge.  Affirmed.

Tyrone A. Sandoval, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted Anthony Gant of selling a controlled substance (cocaine base) in violation of Health and Safety Code section 11352, subdivision (a).  On appeal he argues the trial court committed prejudicial error in admitting evidence he was in possession of marijuana at the time of his arrest and had previously (in 2003) sold cocaine base to an undercover officer.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Evidence Gant Sold Cocaine Base*

While working undercover near the intersection of Arlington and West Vernon Avenues, Los Angeles Police Officers Henry Merin and Brett Rutkowski, both of whom testified at trial and identified Gant, observed a hand-to-hand transaction between Gant and a woman subsequently identified by the last name of Oday.[1]  After engaging in conversation, Oday gave money to Gant (described by the officers as a "green item resembling U.S. currency").  Gant then reached inside the back of his pants—to "his buttocks area" according to Merin; to his "back anal region" according to Rutkowski— and produced a plastic bag containing an off-white substance.  Gant broke off a piece of the substance and handed it to Oday.  Oday placed the item inside a tissue in her left hand and walked away, followed by Merin and Rutkowski, who kept her within their line of sight.  Merin and Rutkowski detained Oday about six blocks from the site of the transaction and recovered an off-white rock-like substance resembling cocaine base inside a small, clear plastic container (a "bindle") in a white tissue Oday held in her left hand.  The parties stipulated the chemical analysis of the substance established it was .02 grams of cocaine base.

As the officers pursued Oday, Officer Merin notified Los Angeles Police Officer James Moon they had seen a hand-to-hand drug sale.  After detaining Oday, Merin gave Gant's description to Moon, who began looking for Gant in the general area of the transaction.  According to Moon, he was told the suspect was a male Black, bald, wearing

---

[1]     Officer Merin estimated they were approximately 20 to 30 feet away from Oday and Gant; Officer Rutkowski estimated they were 30 to 50 feet away.

a white T-shirt, black pants and white shoes.  Eventually Moon saw someone fitting the description he had been given enter an apartment building and then leave the building approximately 30 to 45 minutes later.  The suspect sat on a bus bench, where he was arrested and taken into custody by uniform officers after Merin confirmed he was the individual Merin had seen engage in the hand-to-hand drug sale.  At the police station Rutkowski and Moon conducted a strip search of Gant.  They recovered $28 in cash, a black bottle containing marijuana and a piece of plastic containing a white residue from Gant's anus.

2. *Defense Motions To Exclude Evidence Gant Was in Possession of Marijuana at the Time of His Arrest and Had Previously Sold Cocaine Base to an Undercover Police Officer*

Prior to opening statements defense counsel moved to exclude photographs showing marijuana recovered from Gant at the time of his arrest, arguing it was irrelevant to the charge of selling cocaine base and unduly prejudicial.  The prosecutor proposed admitting the photographs to give the jury "a complete picture of what occurred here."  The court permitted the evidence, explaining the People were entitled to show everything that was seized from Gant, but indicated it would give a limiting instruction that Gant's possession of marijuana could not be considered in determining his guilt.  In addition to introducing the photographs, Officers Merin and Moon testified that marijuana had been recovered from Gant following his arrest.  The court subsequently instructed the jury, "In deciding whether or not defendant committed the offense charged in count I, you may not consider whether defendant was in possession of marijuana at the time of his arrest."

Defense counsel also moved prior to opening statements to exclude evidence of Gant's 2003 drug sale.  The prosecutor explained the People sought to introduce Gant's prior conviction under Health and Safety Code section 11352, subdivision (a), which involved a small street sale of cocaine base, to show a common plan or scheme.  Gant's counsel argued the prior offense was not relevant and, even if relevant, was more prejudicial than probative.  The court initially indicated it believed it was relevant to show common plan, but reserved its final ruling on how the evidence could be used until

3

it knew more about the case. Immediately prior to opening statements the court ruled the evidence was admissible on the issue of intent.

At trial Los Angeles Police Detective Edward Zavala, who had arrested Gant in 2003 testified, based on information in the police report he had prepared at that time, he purchased 0.30 grams of rock cocaine (cocaine base) for $20 from Gant in the neighborhood of Vernon Avenue and Sixth Avenue (approximately six blocks from the location of the sale witnessed by Officers Merin and Rutkowski). According to the report, Gant removed a white plastic bindle from his rear pants pocket. Gant then placed the bindle, which contained an off-white solid that was subsequently determined to be cocaine base, into Zavala's hand. Evidence of Gant's 2003 conviction was not introduced.

The court instructed the jury in accordance with CALCRIM No. 375 that it could consider evidence Gant sold cocaine base in 2003 only if the People had proved Gant committed that offense by a preponderance of the evidence and, if they had, could then consider that evidence only for the limited purpose of deciding whether Gant had acted with the intent to sell cocaine base in this case.[2] The court further instructed, if the jury concluded Gant had committed the uncharged offense, that fact was not sufficient by itself to prove he was guilty of the current charge and also cautioned the jury not to conclude from this evidence that Gant had a bad character or was disposed to commit crime.

---

[2] The court instructed, in part, "If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to sell, furnish, administer, give away, transport, import cocaine base in this case."

4

### 3. *Closing Arguments*

In closing argument, given after the court instructed the jury, the prosecutor argued Gant, who had not testified in his own defense or presented any defense witnesses, "is a small town drug dealer. He sells on the streets small amounts of street-level narcotics." The prosecutor reminded the jury Gant had a small amount of money on him, when arrested, "which is common for street-level narcotics. He also had some marijuana on him." She added, Gant "knew what it was [that he sold to Oday]. This isn't Mr. Gant's first rodeo, as you have all heard. He's had interaction with police officers before. He knew it was rock cocaine; he knew it's a small amount. He engaged in these types of sales."

Defense counsel, for his part, noted the distance Officers Merin and Rutkowski were from the scene they had described (somewhere between 20 and 50 feet) and emphasized the difficulty of clearly seeing the purported exchange of currency for a small packet of drugs. Stressing the People's burden to prove Gant's guilt beyond a reasonable doubt, counsel suggested Oday had the cocaine with her before she interacted with Gant and the officers, who were working undercover in an area known for narcotics trafficking, simply assumed they had seen a drug sale take place. Counsel also asked the jury not to give undue weight to the evidence Gant had previously been arrested for the sale of cocaine.

### 4. *Jury Deliberations, Verdict and Sentencing*

After final instructions the jury began deliberating at 2:45 p.m. on December 8, 2014. At 3:30 p.m. the jury submitted a request to the court: "We need the description of defendant, i.e., what clothing he was wearing, by all 3 officers before his arrest." The court informed counsel of the request, and the jury was advised a read-back would occur the following day. The jury was excused for the day at 4:00 p.m. Read-back occurred the following day in the jury room shortly after deliberations resumed at 9:00 a.m. (The record on appeal does not reflect what portions of the testimony were reread.) At 10:00 a.m. the jury reported it had a verdict.

The jury found Gant guilty on the single count charged, sale of a controlled substance, cocaine base, in violation of Health and Safety Code section 11352, subdivision (a). The court sentenced Gant to the middle term of four years to be served in county jail and elected not to impose an additional three-year term under Health and Safety Code section 11370.2, subdivision (a), for his prior conviction for sale of a controlled substance.[3] The court awarded Gant 172 days of presentence custody credit and imposed statutory fines, fees and assessments.

## DISCUSSION

1. *Governing Law and Standard of Review*

"Only relevant evidence is admissible at trial. (Evid. Code, § 350.) Under Evidence Code section 210, relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' A trial court has 'considerable discretion' in determining the relevance of evidence." (*People v. Merriman* (2014) 60 Cal.4th 1, 74.) Similarly, the court "has broad discretion to exclude relevant evidence under Evidence Code section 352 'if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citations.] We review rulings regarding relevancy and Evidence Code section 352 under an abuse of discretion standard." (*People v. Linton* (2013) 56 Cal.4th 1146, 1181.) "We will not reverse a court's ruling on such matters unless it is shown '"the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*Merriman*, at p. 74.)

Similarly, the trial court's determination of the admissibility of evidence of uncharged offenses is reviewed for abuse of discretion. (*People v. Kipp* (1998)

---

[3] Prior to opening statements Gant moved to bifurcate trial of the special allegation he had been convicted of the sale of cocaine base in 2003, waived his right to a jury trial and stipulated to the conviction.

18 Cal.4th 349, 369 ["[o]n appeal, the trial court's determination of this issue, being essentially a determination of relevance, is reviewed for abuse of discretion"].) Although California law has long precluded use of evidence of a person's character (a predisposition or propensity to engage a particular type of behavior), including evidence of character in the form of specific instances of uncharged misconduct, as a basis for an inference that he or she acted in conformity with that character on a particular occasion (Evid. Code, § 1101, subd. (a);[4] *People v. Ewoldt* (1994) 7 Cal.4th 380, 393), this rule "does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, at p. 393; see Evid. Code, § 1101, subd. (b);[5] *People v. Leon* (2015) 61 Cal.4th 569, 597-598; see also *People v. Falsetta* (1999) 21 Cal.4th 903, 914 ["the rule against admitting evidence of the defendant's other bad acts to prove his present conduct [is] subject to far-ranging exceptions"].) However, even if evidence of uncharged crimes is relevant for a purpose other than the person's character or disposition, before admitting the evidence a trial court must also find it has substantial probative value that is not largely outweighed by its potential for undue prejudice under Evidence Code section 352. (*Leon*, at p. 599; *Kipp,* at p. 371.) Whether the probative value is outweighed by the prejudicial effect of the evidence, like other evidentiary rulings by the trial court, is subject to abuse-of-discretion review. (*Leon*, at p. 599; *People v. Davis* (2009) 46 Cal.4th 539, 602.)

---

[4]    Evidence Code section 1101, subdivision (a), provides, "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

[5]    Evidence Code section 1101, subdivision (b), provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

2. *Any Evidentiary Error Was Harmless*

a. *Evidence that Gant possessed marijuana*

To prove Gant was guilty of selling a controlled substance, the People were required to prove, in addition to the actual sale of a usable amount of a controlled substance, that Gant knew of the substance's nature or character as a controlled substance (that is, that he knew he was selling rock cocaine to Oday). Although Gant's defense at trial was simply that a reasonable doubt existed whether the undercover officers had actually witnessed a sale at all, not that he did not know what he was selling, "'[t]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the case.'" (*People v. Jones* (2011) 51 Cal.4th 346, 372; accord, *People v. Ewoldt, supra*, 7 Cal.4th at p. 400, fn. 4.) Accordingly, the People were entitled to introduce evidence to prove Gant's knowledge.

On appeal the People argue evidence of Gant's possession of marijuana was admissible to show "the absence of error regarding his knowledge of the illegality of the cocaine base," citing case law for the proposition that similar acts are admissible to show the absence of mistake. There are two problems with this argument. First, while it is true as a general matter that in prosecutions involving controlled substances evidence of prior drug convictions may be relevant to prove knowledge of the illegal nature of the substance (see, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 607), to be admissible on this theory it is necessary "that the controlled substance be the same." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 241; see also *id.* at pp. 242-243 ["to establish knowledge when the element is akin to the absence of mistake, the uncharged events must be sufficiently similar to the circumstances of the charged offense to support the inference that what defendant learned from the prior experience provided the relevant knowledge in the current offense"].)[6]

---

[6] At pages 4 to 5 of her respondent's brief the Attorney General cites *Hendrix* in support of her argument in the following manner: "see also *People v. Hendrix* (2013) 214 Cal.App.4th 216, 241-42, citing *United States v. Vo* (9th Cir. 2005) 413 F.3d 1010,

Second, the evidence Gant possessed marijuana at the time of his arrest was not admitted to demonstrate his knowledge of the controlled nature of the substance he allegedly sold Oday, nor was the jury given a limiting instruction to that effect. In the trial court the prosecutor argued the evidence was admissible simply "to give the jury a complete picture of what occurred here," that is, that it was one of the items recovered from Gant at the time of his arrest; and the trial court admitted the evidence on the express condition it would instruct the jury it could not consider Gant's possession of marijuana for purposes of determining his guilt—that is, the court apparently determined the evidence was not relevant (or its limited relevance was outweighed by undue prejudice) but allowed its introduction in any event. That was error.

Nonetheless, the erroneous admission of the marijuana evidence was harmless. (See Evid. Code, § 353 ["[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . . the error or errors complained of resulted in a miscarriage of justice"]; *People v. Rowland* (1992) 4 Cal.4th 238, 264 [prejudicial effect of erroneous admission of evidence that is not federal constitutional error is evaluated under *People v. Watson* (1956) 46 Cal.2d 818, 836, standard of whether it is reasonably probable defendant would have received a more favorable result if evidence had been excluded].) Although the prosecutor improperly referred to Gant's possession of marijuana in her closing argument,[7] the trial court instructed the jury not to consider that evidence in

<hr />

1017-1019 [evidence of a prior cocaine trafficking conviction admissible in methamphetamine trafficking case to establish absence of mistake because the evidence showed that defendant had familiarity with drug trafficking in general].)" Far from supporting her position, however, *Hendrix* directly contradicts the Attorney General's argument, permitting evidence of a prior controlled substance incident to prove knowledge only if the controlled substances in the past and current incidents are the same. *United States v. Vo*, *supra*, 413 F.3d 1010, a federal case without precedential value that takes a contrary view, was cited by *Hendrix*, but with a "but see" signal that the Attorney General has curiously omitted.

[7] Gant's counsel neither objected to the prosecutor's reference to the fact Gant had

deciding the issue of Gant's guilt of the charged offense and also instructed the jury counsel's arguments were not evidence. "[A]bsent some indication to the contrary, we assume a jury will abide by a trial court's admonitions and instructions." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1336.)

In addition, the evidence supporting the jury's finding of guilt was overwhelming. Officers Merin and Rutkowski witnessed the crime. They identified Gant at trial as the individual they saw engage in the hand-to-hand transaction with Oday and confirmed Gant's identity to Officer Woods after Woods later detained Gant. Moreover, when Oday was detained, after being under continuous observation by the officers, she was still holding in her left hand a bindle containing cocaine base. In addition, when Gant was searched following his arrest, officers found a piece of plastic containing white residue in his anus, linking Merin and Rutkowski's description of Gant's actions before transferring the bindle to Oday (reaching inside his "buttocks area" or "anal region") to the cocaine base recovered from Oday's hand. The jury's request to have reread testimony regarding the officers' description of Gant's clothing, submitted only 45 minutes after deliberations began, does not indicate, as Gant now argues, this was a close case or the jurors struggled with relying on the officers' identifications of Gant as the seller. To the contrary, the fact the jury deliberated for only two hours and 15 minutes, including the time for read-back, suggests it found the officers' testimony credible and persuasive. It is not reasonably probable Gant would have obtained a more favorable result if the marijuana evidence had been excluded.

---

marijuana on him when he was arrested nor requested a curative admonition. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 726 [a claim of prosecutorial misconduct during closing argument is generally preserved for appeal "only if the defendant objects in the trial court and requests an admonition, or if an admonition would not have cured the prejudice caused by the prosecutor's misconduct"]; see also *People v. Centeno* (2014) 60 Cal.4th 659, 675 ["'[t]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one'"].)

10

### b. *Evidence of Gant's 2003 arrest for sale of cocaine base*

As discussed, prior to opening statements the court limited use of the evidence of Gant's 2003 arrest for sale of cocaine base to the issue of intent, implicitly rejecting the prosecutor's argument it was admissible to show a common plan or scheme. The court's instructions expressly limited the jury's consideration of the evidence to that element of the charged offense. We agree with Gant that the limited probative value of the evidence of the 2003 drug sale to prove intent was significantly outweighed by the substantial prejudicial effect of the evidence and that the trial court abused its discretion in permitting the evidence to be introduced for that purpose.

In *People v. Balcom* (1994) 7 Cal.4th 414, a case decided the same day as *People v. Ewoldt, supra,* 7 Cal.4th 380, the Supreme Court explained, "'Evidence of *intent* is admissible to prove that, if the defendant committed the act alleged, he or she did so with the intent that comprises an element of the charged offense. "In proving intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it." [Citation.]'" Although the Court acknowledged a plea of not guilty puts at issue all of the elements of the offense, including defendant's intent, in many instances if the jury found that defendant committed the act alleged, "there could be no reasonable dispute that he harbored the requisite criminal intent." (*Balcom*, at p. 422.) Thus, although evidence that defendant had committed uncharged similar offenses would have some relevance regarding his intent in the pending case, "evidence of defendant's uncharged similar offenses would be merely cumulative on this issue." (*Id.* at p. 423.) That is exactly the situation here. If the jury accepted the evidence that Gant sold cocaine base to Oday, there could be no reasonable dispute he did so with the required general criminal intent; yet the potential for undue prejudice from the jury hearing of a prior similar sale in the same general location was considerable. (See *Ewoldt*, at p. 404; Evid. Code, § 352.)

Nonetheless, we agree with the Attorney General the prior offense was sufficiently similar to the charged crime to justify its admission to prove a common plan. (See *People v. Chism* (2014) 58 Cal.4th 1266, 1307, fn. 13 ["""a ruling or decision, itself

11

correct in law, will not be disturbed on appeal merely because given for a wrong reason""]; see also *People v. Balcom, supra*, 7 Cal.4th at p. 423 [evidence of uncharged offense admissible to prove the existence of a common design or plan, although not to prove intent].) [8] "[E]vidence of a common design or plan is admissible to establish the defendant committed the *act* alleged.  Unlike evidence used to prove intent, where the act is conceded or assumed, [i]n proving design, the act is still undetermined . . . .  To establish a common design or plan the evidence must demonstrate not merely a similarity in results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." (*Balcom*, at pp. 423-423, internal quotation marks and citations omitted.)  That degree of similarity is present here:  Both the 2003 incident and the charged offense involved the street sale of a small amount of similarly packaged cocaine base in a hand-to-hand transaction in the same part of the Los Angeles.  (See *People v. Walker* (2006) 139 Cal.App.4th 782, 803 ["'a common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances'"].)  And for this purpose, the substantial probative value of the evidence was not plainly outweighed by the potential for undue prejudice.  (See *People v. Karis* (1988) 46 Cal.3d 612, 638 ["The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.  '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case.  The stronger the evidence, the more it is "prejudicial."'"].)

---

[8]     The 2003 sale of cocaine base may also have been admissible to prove Gant's knowledge he was selling a controlled substance since, unlike the evidence of his possession of marijuana, the substances in the 2003 incident and the current offense were the same.  (See *People v. Hendrix, supra*, 214 Cal.App.4th at p. 241.)

Although the trial court admitted the evidence for the wrong reason and limited the jury's consideration of it to an essentially undisputed issue, that restriction worked to the detriment of the prosecution, not Gant. The jury was instructed to consider the 2003 sale only to determine, if it found that Gant had sold cocaine base to Oday, whether he did so with the requisite criminal intent, and not for any other purpose (that is, not to decide whether he in fact had made a further sale as part of a common plan to traffic in small amounts of rock cocaine). (See *People v. McKinnon* (2011) 52 Cal.4th 610, 670 [jurors are presumed to understand and follow the court's instructions].) Moreover, notwithstanding the prosecutor's reference in closing argument to the prior incident and her comment that Gant "engaged in these types of sales,"[9] for the reasons discussed above, any error in how this evidence was admitted, or the jury instructed to consider it, was harmless. Similarly, given the strength of the People's evidence, even when we consider the cumulative effect of the evidentiary errors Gant has identified, it is not reasonably probable the jury would have reached a result more favorable to Gant in the absence of those errors. Gant was not deprived of a fair trial. (See generally *People v. McDowell* (2012) 54 Cal.4th 395, 442 [the few errors that occurred, whether considered individually or collectively, were harmless; defendant "was entitled to a fair trial but not a perfect one"].)

---

[9] As with the prosecutor's comment regarding Gant's possession of marijuana, defense counsel did not object to the prosecutor's statements during her closing argument regarding his prior arrest for sale of cocaine base. (See footnote 7, above.)

**DISPOSITION**

The judgment is affirmed.


                                        PERLUSS, P. J.

We concur:


        SEGAL, J.


        BLUMENFELD, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.