**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 1 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50424 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00266-PA-1 |
| v. | |
| KIM DENISSE SCOVIS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted July 10, 2018
Pasadena, California

Before: BERZON and N.R. SMITH, Circuit Judges, and CASTEL,[**] District
Judge.

Kim Denisse Scovis appeals her jury conviction and sentence for theft

of government property in violation of 18 U.S.C. § 641. We have jurisdiction

under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable P. Kevin Castel, United States District Judge for the
Southern District of New York, sitting by designation.

1. Sufficiency of the Evidence. Sufficient evidence supports Kim Scovis's conviction for stealing money belonging to the Social Security Administration ("SSA") in violation of 18 U.S.C. § 641. "To obtain a conviction under § 641, the government must prove the following four elements: (1) the defendant embezzled, stole, purloined, or knowingly converted to [her] use or the use of another; (2) things of value; (3) the things of value were federal money or property worth more than [$1,000]; and (4) the defendant did such acts willfully and with the intent to appropriate the property to a use inconsistent with the owner's rights and benefits." *United States v. Seaman*, 18 F.3d 649, 650 (9th Cir. 1994); 18 U.S.C. § 641.

Viewed in the light most favorable to the government, there was sufficient evidence for a rational juror to find Scovis guilty of violating § 641 beyond a reasonable doubt. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc).

The evidence adduced at trial showed that Kim Scovis's grandmother, Mary Scovis, died in March 2004, but that the SSA continued to deposit retirement insurance benefits into a Citibank account in Mary Scovis's name until November 2012. From 2006 to 2012, Citibank addressed monthly statements for that account to Kim Scovis's home address. An SSA investigator testified that Kim Scovis recounted a January 2012 conversation in which a Citibank employee told Kim

2

Scovis and her mother, Jenny Scovis, that the funds in Mary's account had been deposited by the SSA.

There was evidence that on November 27, 2012, Kim Scovis and Jenny Scovis visited a Citibank branch in Thousand Oaks, California. Jenny Scovis and Kim Scovis both executed paperwork to open a new joint bank account, and Jenny Scovis signed papers to close Mary Scovis's account and transfer its holdings of $68,048.24 to the new joint account. The SSA investigator testified that Kim Scovis informed her that she and her mother initiated these transactions after learning that Citibank's legal department intended to close Mary Scovis's account. A rational juror could have found beyond a reasonable doubt that the transfer of the balance from Mary Scovis's account to the joint account on November 27 effectuated the theft of SSA funds by Kim Scovis, which she undertook in concert with her mother.

The government also offered evidence tending to show Kim Scovis's intent to appropriate the property for a use inconsistent with the SSA's rights to the money. On November 28, 2012, one day after the joint account was opened, three withdrawals in the amounts of $5,000, $500 and $122.75 were made on Kim Scovis's debit card. Additionally, the government introduced evidence of four checks written to Kim Scovis from her deceased grandmother's bank account and signed in the grandmother's name. All checks were made either to Kim Scovis

3

personally or to her law office. Three of the checks were dated 2009 and endorsed by Kim Scovis, and the fourth was dated November 21, 2012, and was not endorsed. Given that these checks were purportedly signed by a person she knew to be deceased, they were additional, non-propensity evidence going toward Scovis's intent to take money from an account that did not belong to her or her mother, and toward the opportunity that she had to do so.

We therefore conclude that there was sufficient evidence for a rational juror to find beyond a reasonable doubt that Kim Scovis was guilty of violating 18 U.S.C. § 641. For the same reasons, we conclude that the district court's denial of Scovis's post-trial motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 was not in error.

2.      Evidentiary Rulings.  Where challenges to a district court's evidentiary rulings have been preserved, "we review the district court's rulings for an abuse of discretion, and uphold them unless they are 'illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *United States v. Gadson*, 763 F.3d 1189, 1199 (9th Cir. 2014) (quoting *United States v. Hinkson,* 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

First, the district court did not err or abuse its discretion by admitting into evidence the four checks from Mary Scovis's bank account that were written either to Kim Scovis or her law firm in 2009 and 2012. Under Federal Rule of

4

Evidence 404(b), it was within the district court's discretion to conclude that these checks were non-propensity evidence of her opportunity and intent to access SSA funds deposited into Mary Scovis's account. *See United States v. Vo*, 413 F.3d 1010, 1018-19 (9th Cir. 2005).

Second, the district court did not err or abuse its discretion by excluding certain out-of-court statements made by Jenny Scovis, which Kim Scovis moved to admit as statements against interest under Federal Rule of Evidence 804(b)(3). In weighing a Rule 804(b)(3) application, "the exculpatory statements of family members 'are not considered to be highly reliable.'" *Gadson*, 763 F.3d at 1200 (quoting *LaGrand v. Stewart*, 133 F.3d 1253, 1268 (9th Cir. 1998)). The government also proffered that Kim Scovis's sister, Teena, would have testified that Jenny Scovis suffered from cognitive and memory disorders, possibly including transient ischemic attacks and dementia. This further undermines the trustworthiness of Jenny Scovis's statements.

Third, the district court did not err or abuse its discretion by excluding evidence of a purported handwritten will authored by Mary Scovis. Defense counsel attempted but failed to lay a foundation for its admission through questions to an SSA agent who was unfamiliar with the document's origins or veracity. *See* Fed. R. Evid. 901(a).

Fourth, the district court did not err or abuse its discretion in excluding evidence concerning Jenny Scovis's misdemeanor forgery conviction in 1982 or evidence of professional disciplinary penalties imposed by the California state bar in 2011 and 2012. The district court did not abuse its discretion in concluding that this evidence was not relevant to Jenny Scovis's intent or knowledge under Rule 404(b), or otherwise admissible.

Fifth, the district court did not err or abuse its discretion when, during cross-examination, it limited defense counsel's questions to a government witness about the SSA's data-entry procedures. Defense counsel explained that his questions were intended to establish that any report of Mary Scovis's death by Kim Scovis to the SSA may have gone unrecorded. At that point in the trial, there was no evidence that Kim Scovis had reported her grandmother's death to the SSA, and, indeed, no such evidence was ever offered by defendant. The district court's ruling did not make a blanket exclusion of any evidence of such a report on her direct case. None was offered.

3.    Subpoena Applications. The district court did not abuse its discretion by denying Kim Scovis's application for subpoenas to the California State Teachers Retirement System ("CALSTRS") and Los Robles Medical Center ("Los Robles"). "Federal Rule of Criminal Procedure 17(c) requires a showing of relevancy, admissibility, and specificity to support the issuance of a *subpoena*

6

*duces tecum.*" *United States v. Komisaruk*, 885 F.2d 490, 494 (9th Cir. 1989). The application must be brought in good faith and "not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699 (1974).

The subpoena application directed to CALSTRS sought "[a]ny and all documents" related to Mary Scovis, including a record of benefits payments and any correspondence with Jenny Scovis. Kim Scovis argued that any such benefits payments were evidence that Mary's bank account held funds from a source other than the SSA, and that CALSTRS may have conducted an investigation that found Jenny Scovis exercised control over Mary's account. The district court offered to approve a subpoena limited to CALSTRS payments from 2006 to 2009 – a time period specified in the attorney declaration – but counsel explained that he was seeking earlier records, as well as information about a possible CALSTRS investigation of Jenny. The district court did not abuse its discretion in denying the application on the grounds that the defendant failed to make a showing of specificity or relevance, and that the application was a "fishing expedition."

The district court also did not abuse its discretion in denying the application to Los Robles, which sought information related to Jenny Scovis's medical treatment. The district court did not abuse its discretion in denying the application on grounds that it lacked specificity and relevance, and was also a "fishing expedition."

4.      The "Mere Presence" Instruction. The district court did not err by refusing to include the "mere presence" instruction requested by Kim Scovis. "A party's claim that the district court's instructions did not adequately cover the theory of the defense is reviewed de novo." *United States v. Tucker*, 641 F.3d 1110, 1122 (9th Cir. 2011). A defendant is entitled to an instruction on her theory of defense, so long as it has support in law and some basis in the evidence. *Id.*

A "mere presence" defense asserts that a defendant was present at the scene of a crime but had no knowledge or control as to its commission. *See United States v. Castillo*, 866 F.2d 1071, 1086-88 (9th Cir. 1988). "A district court may properly refuse to give a 'mere presence' instruction when the government's case rests on 'more than just a defendant's presence, and the jury is properly instructed on all elements of the crime.'" *United States v. Reed*, 575 F.3d 900, 925 (9th Cir. 2009) (quoting *United States v. Howell,* 231 F.3d 615, 629 (9th Cir. 2000)).

As discussed, the government's case relied on more than Kim Scovis's presence at the Citibank branch on November 27, 2012. It included evidence that she signed paperwork to open the joint bank account that received the fund transfer from her deceased grandmother's account; that she opened the account after learning that Citibank intended to close her grandmother's account; that she did so with knowledge that her grandmother's account consisted of funds deposited by the SSA; and that funds were withdrawn from the new account the

8

next day using her debit card.  Because the government's case included evidence beyond Scovis's presence at Citibank, and the district court properly instructed the jury on the elements of 18 U.S.C. § 641, the failure to give a "mere presence" instruction was not in error.  *See Reed*, 575 F.3d at 925.

     5.     <u>Constructive Amendment of the Indictment.</u>  The district court did not constructively amend or vary the indictment when it instructed the jury that Kim Scovis was charged with committing theft of government property "on or about November 27, 2012," and instructed the jury on the definition of the phrase "on or about."  A constructive amendment occurs when a court alters the charging terms of an indictment, either literally or in effect.  *United States v. Wilbur*, 674 F.3d 1160, 1177-78 (9th Cir. 2012).  A variance occurs when the charging terms are unaltered, but the evidence at trial proves facts that are materially different than those charged in the indictment.  *Id.*

The indictment's text charged Scovis with committing the crime "on or about November 27, 2012," which was consistent with the jury instruction.  At trial, the government offered evidence and repeatedly asserted in argument that Scovis's crime was the transfer of funds from the account of Mary Scovis to the account in the joint name of Kim Scovis and Jenny Scovis on November 27.  The district court's instructions did not expand the scope of the offense to include the debit-card withdrawals of November 28, evidence of which was only admitted to

9

show Scovis's intent, knowledge or lack of mistake. The district court instructed the jury that evidence of acts not charged in the indictment could be considered only for their bearing on defendant's intent and opportunity, and for no other purpose. A jury is presumed to follow a court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

The "on or about" instruction thus did not invite the jury to find that the withdrawals of November 28 were the crime charged itself or any element of that crime, and was not a constructive amendment or variance of the indictment.

6. <u>The Right to Present a Defense.</u> The cumulative effect of the district court's evidentiary rulings did not deprive Scovis of her constitutional right to present a defense. *See Gadson*, 763 F.3d at 1200-01. In certain instances, the cumulative effect of a court's rulings may deprive a defendant of the right to present a defense, but a defendant's right to present evidence "is subject to reasonable restrictions" and the exclusion of evidence is unconstitutional "only where it has infringed upon a weighty interest of the accused." *Id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

For the reasons largely explained, the district court's rulings were reasonable restrictions on the defense, and do not infringe upon a "weighty interest" of constitutional dimensions. Further, as discussed, the excluded evidence did not have the "persuasive assurances of trustworthiness" or "constitute

critical exculpatory evidence," the exclusion of which can undermine the right to present a defense. *Gadson*, 763 F.3d at 1201 (quotation marks omitted).

**AFFIRMED.**